The opinion of the Court was delivered by
Munro, J.
In December, 1840, Edward R. Laurens was elected by the Legislature, Master in Equity for Charleston District, and lawfully inducted into office.
On the 3rd of December, 1844, he was again elected ; on the 9th of December his official bond was executed; on the 24th of December it was approved hy the Commissioners, and its form approved by the Attorney-General; on the 31st March, 1845, it was filed in the Treasurer’s office; and his commission bears date, the 7th day of May, 1845 — theouly oath, however, that is endorsed thereon, is the oath prescribed by the amendment to the fourth article of the State Constitution.
In December, 1848, he was again elected to the same office; on the 4th of December his official bond was executed ; on the 7th of February, 1845, it was approved by the Commissioners *226 and by the Attorney-General — was lodged in the Treasurer’s office on the same day; and his commission bears date the 8th February, to which no seal was attached.
In the two first stated cases the actions are against Eliza R. Toomer and W. C. Gatewood, as sureties on Laurens’s official bond of 1844. They rest their defence upon two grounds— 1st, That the said Master did not sue out his commission under the election of 1844, within the time prescribed by law. 2nd, That he did not take and subscribe the proper oaths of office, and cause the same to be endorsed upon his commission. In the last stated case, the action is against Gatewood, as one of the sureties on Laurens’s official bond of 1848 — who also rests his defence on two grounds: 1st, That the bond was not approved and filed in the Treasurer’s office in proper time. 2nd, That the commission issued was no commission — not being sealed.
These several grounds of defence all resolve themselves into the single inquiry, Did it form a part of the contract of these defendants, when they undertook to become responsible for any official default their principal might commit,, during the several terms to which he had been elected, that before their liability should attach, their said principal should strictly comply with all the requirements of the law, so as to constitute himself, before entering upon the duties of his office, in all respects, and in every particular, an officer dejure, and not an officer defacto merely?
The first question here is, the effect of Laurens’s failure to sue out his commission within the time required by law, and to take and endorse thereon the prescribed oaths of office. By the 3rd section of the Act of 1840, (11 Stat. 109) every Master-in-Equity, is required within three weeks after his election, or appointment, to tender his bond to the proper officers for approval, and immediately after the same has been approved, to deposit the same with the Treasurer, and sue out his commission ; “ and upon his neglect or failure to do so rvithin the said time, his office shall be deemed absolutely vacant, and shall be filled by election or appointment, as heretofore provided.” By *227 the fourth section of the Act, he is also required, before entering upon the duties of his office, to take, and subscribe, the oath prescribed by the amendment of the 4th article of the Constitution of this State; also the oath required to be taken by district officers, and endorse the same on his commission ; “ and unless the said oaths be so taken, endorsed and subscribed within ten days from the issuing of the said commission, the said commission shall be utterly null and void, and the said office deemed absolutely vacant.” In the leading case on this subject, Marbury vs. Madison, 1 Cra. 137, it was held that a commission is not necesssary to the appointment of an officer by the Executive — and the following distinction was taken: That when the appointment to office is evidenced by a public act, “ the performance of such public act would create the officer; and if he was not removable at the will of the Executive, would either give him a right to his commission, or enable him to perform its duties without it.” In the case of the State vs. Billy, a slave, 2 N. & McC. 356, it is said, “that the commission is the mere certificate of election and as to the oath of office it was held) “ the true constitutional qualification, the oath of office, may be taken before or after, and has no essential relation to, or dependence upon, the commission.” In the State vs. Jeter, 1 McC., 233, it was ruled that, “ the tenure by which an office is held does not depend upon the commission which the Governor may think proper to give — it is only evidence of the appointment. The tenure must depend upon the provisions of the Act creating the office, or upon the Constitution.” See also the Treasurers vs. Stevens, 2 McC. 107; McBee vs. Hoke, 2 Sp. 138; Kottman vs. Ayer, 3 Strob. 92. In all these cases the doctrine is affirmed, that the statutory provisions prescribing the manner of executing the bond, suing out the commission, or taking the oaths of office, are merely directory; and that the omission to qualify, by giving the bond, suing out the commission or taking the oaths of office, is cause of forfeiture ; but so long as the officer appointed continues to exercise the duties of his office, his official acts as to third persons are legal.
*228 The remaining point in the inquiry is, Laurens’s failure to file his bond in the Treasurer’s office, within the time prescribed by the Act. To this objection the case of the Treasurers vs. Stevens furnishes a conclusive answer.
That was an action against one of the sureties to a Sheriff’s bond. Several grounds of defence were relied on. One was, that the Act of 1795 required the sureties to be approved by three commissioners — whereas, the bond in question had been approved but by 'two. Another ground was, that the Act declared that the Sheriff should not enter upon the duties of his office, until he had recorded in the Clerk’s office a certificate from the commissioners, that he had executed and lodged in the Treasury his bond, as required by the Act; and that if he failed to comply with these requisites his office was declared vacant.
To the first objection, it was answered by the Court: '‘The injunction is merely directory, and though the total neglect might possibly have afforded a ground for declaring the Sheriff’s office vacated, still, as long as he remained in office, he must be regarded as an officer, and his own failure to perfect his security cannot be pleaded in bar against the consequences of his misconduct, in not discharging his official duties.” To the other objection it was answered: “ It was the duty of the Sheriff to have recorded in the Clerk’s office the certificate of the commissioners. This also is required of him by the Act, and if he did not do so, neither he nor his sureties can take advantage of his wrongful neglect. They are still bound by their bond which was given on their part, and accepted by the treasurers. The end in view, was to obtain security by bond for the officer, and such a bond as the treasurers have accepted: must have been given, and becomes a binding contract. The approval by the commissioners, the certificate, recording, &c., are, besides, no more than mere modes of giving, examining and perpetuating the bond.” Although the doctrine which holds one in office, and exercising its functions to be rightfully there, and, so far as third persons are concerned, legalize his *229 acts, was not questioned in the argument, it may, however, be insisted, that it was inapplicable to the case of Mr. Laurens, inasmuch as there never was a time, from his entry in 1840, to his resignation in 1851, when he held his office under color of title merely, but that during the whole of that time he was holding over de jure, under his qualification and entry in 1840 — that at the expiration of each regular term, he held over de jure, until he could enter de jure — in other words, although he was his own successor, he could not surrender to himself his office under the previous tenure, and enter upon the new term, until he had fully perfected his title by complying with all the requisitions of the law.
This position, it is obvious, is nothing more or less than a counterpart of the case we have just been considering, and rests upon the assumption that the title to the office in question depends entirely upon a strict compliance, on the part of the officer, with all the provisions of the Act creating it; and that a failure in any oue particular, renders his election absolutely void. But it is clear, that such a conclusion cannot be reached, without coming in direct conflict with every respectable judicial adjudication on this branch of the law; for in all of these, to which reference has already been made, we find the doctrine broadly affirmed, that the only effiacy that is imparted to the official title, by a strict compliance with the provisions of the Act- such as the execution of the bond, and filing it in the Treasurer’s office, suing out the commission, and taking and endorsing thereon the oaths of office within a given time — is merely to protect it against forfeiture at the instance of the State. But if, instead of enforcing a forfeiture of the office, the State sees fit to excuse the delinquency of the officer by granting him a commission, the defects in his title, whatever they may be, are thereby completely cured, and if he be already in office, his defacto title is immediately converted into a title de jure, and has relation back to the period of his election; or, if he be not in possession of the office at the time, his right to enter thereon, as against all the world, is unquestionable.
*230 Let us apply this doctrine to the argument which was so ingeniously constructed for the defendants.
While the right of the lawful incumbent in office to resist the entry of his successor until the official title of the latter is perfected, is fully conceded, it is clear, however, that such right can only be practically enforced where the incumbent and the successor are different persons, and that such right, too, can only exist so long as the title of the latter is incomplete; but the moment such title is actually perfected, no matter what may have been the laches or delay that retarded its completion, by a full compliance with all the provisions of the law, the incumbent’s right to resist the entry of his successor is eo instanti at an end ; and this period, whenever it does happen, will form the terminating point of the old tenure, and the commencement of the new.
Let us apply this rule to Mr.. Laurens’s election in 1844— supposing all the time another person to have been the incumbent. On the 3rd of December he was elected. On the 9th his bond was executed. On the 24th it was approved by the commissioners. Up to this time his title was in part perfected. On the 31st March, 1845, his bond was filed in the Treasurer’s office, and his commission was sued out on the 7th of May following. Here, then, were two things which he had omitted to do in order to secure a perfect title to the office — his failure to file his bond in the Treasurer’s office and to sue out his commission, &c., within the time prescribed by the Act.
In that condition of things, and being out of office, as we have supposed, the lawful incumbent might rightfully have resisted his entry, and the State might also have declared his office vacant, and ordered the vacancy to be filled, either by election or appointment, pursuant to the provisions of the Act. But the moment he was permitted to file his bond in the Treasurer’s office, and to sue out his commission, these several delinquencies became completely cured, and his title de facto was rendered as perfect as if there had been a literal compliance with all the provisions of the Act; and any attempt by the incumbent *231 to have resisted his entry would have been rendered as unavailing, as would an attempt on the part of the State to have compelled a forfeiture. The same remarks apply with equal, if not greater force, to the election in 1848.
I now propose to apply the rule to the state of things as they existed upon the several occasions of Mr. Laurens’s elections in 1844 and 1848, and when he united in himself, upon both occasions, the two-fold characters of incumbent and successor. In December, 1844, his office, as we have seen, was declared vacant by the Legislature, when he became a candidate for re-election. On the 3d of December he was elected, and on the 9th executed his official bond. On the 24th day of the same month the bond was approved by the Attorney-General, the Comptroller-General and the Secretary of State. Being all this time in possession of the office, and having perfected his security, he exhibited a complete de facto title — -the only title, by-the-way, in which the public has any interest, as can well be imagined, and one which neither Mr. L. nor his sureties can be permitted to repudiate; for to do so, would be not only to sanction a fraud upon the community, but upon the Legislature. The only acts he omitted to perform, in order to complete his de jure title, were the filing of the bond and the suing out of the commission. These were matters, however, which alone concerned the State, and with which the public had nothing to do. But the moment the bond was filed and the commission sued out, the breach between Mr. Laurens and the State was completely healed, and his title de jure fully perfected. But it is said, “ At the expiration of each regular term he held over de jure, until he could enter de jure.” There was certainly nothing which rendered it imperative on Mr. L. to hold over under his de jure title. It was certainly competent for him to have resigned his office at the expiration of his old term, and to have entered under his de facto title under the new ; and was it not equally competent for him, although the incumbent, without going through the idle ceremony of a formal surrender, to do the same thing — although in a different manner ? But if Mr. L. failed to remove the only *232 obstacle in the way to his regular entry under a de jure title, it was clearly occasioned by his own laches; and is not this objection, if objection it be, encountered by the legal maxim, that a party is not permitted to take advantage of his own wrong. Or, as was said, in the case of the Treasurers vs. Stevens, “It was the duty of the Sheriff to have recorded in the Clerk’s office the certificate of the commissioners. This also is required of him by the Act, and if he did not do so, neither he nor his securities, can take advantage of the wrongful neglect.”
If we refer to the course pursued by Mr. Laurens under his election, in 1848, we will find, if any thing, less of laches, and clearer indications of an abandonment of the old, and an acceptance of the new tenure, than on the former election. On the 1st day of December in that year, he was again elected to the same office. On the 6th day of the same month, his official bond was executed. On the 9th day of February, 1845, a rule was ordered against him by Chancellor Dunkin, to show cause why his office should not be declared vacant for failing to produce his commission on the first day of the term. In his answer to the rule, instead of relying on his de jure title and entry under his election in 1840, he vindicates himself against the charge of laches, by showing that he had used all proper diligence to perfect his title, but had been prevented by circumstances beyond his control. The defect in his de jure title was however remedied by the filing of his bond in the Treasurer’s office on the 8th day of February, and the suing out his commission on the same day; and if the commission was really defective, it was such a defect as could by no means avail the defendants.
But conceding the official titles of Mr. Laurens to hayebeen defective, it is clear, both upon principle and authority, that such defects cannot be pleaded in bar by the sureties, to an action on the official bond for a default committed by their principal ; for what was said in the case of the- Treasurers vs. Stevens, in reference to the office of Sheriff, is strictly applicable to the case under consideration: “ When we reflect that the *233 bond and security, the approval, the certificate and recording, are all proved and done by the Sheriff after his election, and before he shall enter upon his office — that these are all acts required strictly of him, we cannot but foresee the great damage of permitting him, or his sureties, deriving advantage from any error, or omission, either in the bond, or in the manner of giving or recording it.”
It is therefore the unanimous opinion of the Court that the motions for a non-suit, and for a new trial, in all the cases, should be dismissed; and it is so ordered.
O’Nball, Wardlaw, Withers, Whitner and Glover, JJ., concurred.

Motions dismissed.